## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 783 | **DATE** | 11/7/2003 |
| **CASE TITLE** | UNITED STATES OF AMERICA vs. EDDIE RAINEY CARTER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to suppress identification is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | NOV 1 2 2003 date docketed | |
| | Docketing to mail notices. | | | 78 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | EF | courtroom deputy's initials | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 01 CR 783 |
| Plaintiffs, ) | |
| ) | |
| v. ) | Judge Charles R. Norgle |
| ) | |
| EDDIE RAINEY CARTER, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

DOCKETED
NOV 1 2 2003

CHARLES R. NORGLE, District Judge:

## I. INTRODUCTION

Defendant, Eddie Rainey Carter, has been charged in a three-count superceding indictment. Count I alleges that on September 1, 2001 Defendant assaulted and put in jeopardy the lives of bank employees and customers by the use of a dangerous weapon, namely a firearm, in violation of 18 U.S.C. §§ 2113 (a) and (d). Count II alleges that on September 4, 2001 Defendant assaulted and put in jeopardy the lives of bank employees and customers by the use of a dangerous weapon, namely a firearm, in violation of 18 U.S.C. §§ 2113 (a) and (d). Count III alleges that on September 4, 2001 Defendant used and carried and brandished a firearm during and in relation to the commission of a crime of violence, namely a bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A).

Before the Court is Defendant's motion to suppress identification, which relates to the charge in Count I. Defendant's motion also seeks to suppress any in-court testimony concerning the identification, as well as the appointment of a eyewitness identification expert. Essentially, the motion does not dispute the facts outlined by the Government. Defendant offers nothing to contradict any significant fact as to what occurred before and during the bank robbery on September

1, 2001. Defendant offers no documentary submissions, let alone any of evidentiary quality to demonstrate the existence of a genuine issue of material fact. United States v. DiDomenico, 78 F.3d 294, 300-01 (7th Cir. 1996); United States v. Hamm, 786 F.2d 804, 807 (7th Cir. 1986); United States v. Randle, 966 F.2d 1209, 1212 (7th Cir. 1992). Defendant does, however, submit the photo arrays at issue. Defendant argues Hernandez's identification of Defendant, by picking him out of a photo array, was the result of unduly suggestive identification procedures.

## II. BACKGROUND

Daniel Hernandez ("Hernandez"), working as a teller at the Firstar Bank on September 1, 2001, saw a man who he later identified as the Defendant waiting in the teller line, complaining about the length of the line. Hernandez then saw the Defendant leave the bank. A few minutes later, Hernandez saw the Defendant re-enter the bank, point a gun around the bank, and yell for everyone to get on the floor. The Defendant then approached Hernandez's teller window, pointed the gun at him, and told him to get down. Hernandez got to his knees, opened his teller drawer, and laid on his chest. The Defendant then jumped over the teller counter. Hernandez kept down until he heard that the robber left the bank. He told investigators that the robber was a black male, five feet seven to five feet eight inches tall, slim build, unshaven, aged 27 to 32.

On September 6, 2001, several days after the robbery, teller Hernandez viewed a photo array, prepared from a Chicago Police Department database, which contained six photos of black males, including one of the Defendant (the "September photo array"). Hernandez spent several minutes viewing the array, but did not positively identify any of the men in the photos as the robber.

Approximately three months later, on December 5, 2001, Hernandez viewed a second photo array of six black males, prepared from the FBI photo lab (the "December photo array"). This

second photo array also contained a photo of the Defendant. Hernandez explained that when he viewed the first photo array, he was very upset about the robbery and nervous about making an identification for fear that he may need to testify in court. The agent then showed him the December photo array. Hernandez immediately identified the photo of the Defendant as the person who robbed the bank on September 1, 2001. Hernandez stated that he was one-hundred percent certain of his identification. Of course, Hernandez's certainty goes to the value of his testimony, not its admissibility.

### III. DISCUSSION

Defendant's motion seeks to suppress Hernandez's identification in December 2001, and to preclude Hernandez from making an in-court identification at trial. According to Defendant, due process would be violated by admitting either identification because the identification procedures here were impermissibly suggestive.

The Government correctly states there is a two-step test for evaluating a challenge to identification testimony. First, the defendant must establish that the identification procedure employed was unreasonably suggestive; and if the defendant meets this burden, the court must determine whether, under the totality of the circumstances, the identification is reliable despite the suggestive procedures. See United States v. Galati, 230 F.3d 254, 259 (7th Cir. 2000).

Defendant argues that, for various reasons, the photos in each of the photo arrays impermissibly suggested that the viewer should choose him. However, this Court finds that neither the September photo array nor the December photo array is unreasonably suggestive. The September photo array depicts six black males, all approximately the same age, with short hair, similar facial hair, and similar noses. The December photo array depicts six black males, all of approximately the

same age, with very short hair, similar facial features, and similarly shaped faces. The men pictured in the photo arrays need not look exactly alike, as "a lineups of clones is not required." See Galati, 230 F.3d at 260 (approving photo array of six white men in their forties, with dark and relatively short hair); see also United States v. Moore, 115 F.3d 1348, 1360 (7th Cir. 1997) (approving photo array where photos of six young, clean shaven, black males with some hair, and some similar features); United States v. Sleet, 54 F.3d 303, 309 (7th Cir. 1995) (approving photo array where six men pictured were all black men about the same age).

Defendant argues that since only six photos were included in each spread, they were unduly suggestive; however, six photos has been held numerous times to be sufficient to satisfy due process. See Galati, 230 F.3d at 260; Moore, 115 F.3d at 1360; Sleet, 54 F.3d at 309. Defendant further asserts that the white shirt he is wearing in the September photo array draws undue attention to him; however, another man (at position #2) in that photo array is also wearing a white shirt. Defendant also complains that the Government could have conducted a lineup in September rather than showing a photo array; however, no lineup is necessary. See United States v. Jackson, 835 F.2d 1195, 1198 (7th Cir. 1987).

Defendant's main argument is that showing the September photo array to Hernandez, and later showing him the December photo array, unreasonably suggested to him that he should choose Defendant as the bank robber, since only Defendant's photo appeared in both spreads. However, a previous failure to make a positive identification from a photo array does not necessarily make a later identification less certain. See United States v. Napoli, 814 F.2d 1151, 1160 (7th Cir. 1987) (discussing later in-court identification). The Defendant approached Hernandez while pointing a gun at him. In short, Hernandez got enough of a look at Defendant to obtain a definite impression of his

appearance to make a reasonable identification of the Defendant during the daylight hours in the bank.

The Seventh Circuit has noted before that the "police are not required (in arranging a photographic display of suspects) to conduct a search for identical twins in age, height, weight or facial features." United States ex rel. Christ v. Lane, 745 F.2d 476, 479 n.1 (7th Cir. 1984).

Defendant's motion further seeks suppression of any in-court identification by Hernandez. This motion is also denied. Whether a pretrial identification procedure is unduly suggestive, and whether a witness' subsequent in-court identification is nonetheless reliable, are two separate inquiries. See United States v. Johnson, 859 F.2d 1289, 1292 (7th Cir. 1988); see also Stewart v. Duckworth, 93 F.3d 262, 265 (7th Cir. 1996). A subsequent in-court identification is inadmissible only if there is a very substantial likelihood of irreparable misidentification. See Johnson, 859 F.2d at 1292. The fundamental question is whether a witness' identification testimony is so unreliable that it violates due process to allow the jury to hear it. See Johnson v. McCaughtry, 92 F.3d 585, 597 (7th Cir. 1996). The Court has not been persuaded that due process would be violated if the Court allows the jury to hear any in-court identification testimony of teller Hernandez. Defense counsel will be able to cross-examine Hernandez thoroughly on his previous failure to identify the Defendant. Thorough cross-examination will sufficiently assure that any due process concerns are satisfied.

The reliability of an identification is considered in light of the following factors, first articulated by the United States Supreme Court in Neil v. Biggers, 409 U.S. 188 (1972): "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description, (4) the level of certainty demonstrated

at the confrontation, and (5) the time between the crime and confrontation." Manson v. Brathwaite, 432 U.S. 98, 114 (1977) (citing Biggers, 409 U.S. at 199-200).

Even if the photo arrays were suggestive (which they were not), Hernandez' identification is reliable and admissible.

Additionally, Defendant seeks court-appointment of an expert witness to challenge the reliability of eyewitness identification that the Government intends to introduce at trial. The appointment of an expert is within the discretion of the district court. See United States v. Daniels, 64 F.3d 311, 315 (7th Cir. 1995); United States v. Larkin, 978 F.2d 964, 971 (7th Cir. 1992). Appointment of an expert witness on the reliability of eyewitness identification is not necessary in this case because the testimony of such an expert will not aid the jury in its determination; further, any such testimony might confuse, mislead, or unduly influence the jury.

This court is well aware that the decision to admit expert testimony lies with the district court judge, who performs a "gatekeeping" function. Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 592-93 (1993). The Seventh Circuit has been unwavering in its criticism of and disfavor for expert testimony regarding the reliability of eyewitness testimony. United States v. Crotteau, 218 F.3d 826, 832 (7th Cir. 2000) (affirming exclusion of expert testimony; noting that weaknesses in eyewitness identification testimony ordinarily can be exposed through careful cross-examination); United States v Hall, 165 F.3d. 1095, 1103-04 (7th Cir. 1999) (affirming exclusion of expert testimony; noting that "this Court has a long line of cases which reflect our disfavor of expert testimony on the reliability of eyewitness identification"); accord United States v. Daniels, 64 F.3d 311, 315 (7th Cir. 1995); United States v. Larkin, 978 F.2d 964, 971 (7th Cir. 1992); United States v. Curry, 977 F.2d 1042, 1051 (7th Cir. 1992); United States v. Hudson, 884 F.2d 1016, 1024 (7th

Cir. 1989); United States v. Watson, 587 F.2d 365, 369 (7th Cir. 1978). The Court of Appeals has accordingly affirmed the trial courts' refusals to appoint expert witnesses on eyewitness identification. Daniels, 64 F.3d at 315; Larkin, 978 F.2d at 971. The Court of Appeals has consistently held that such testimony is "well within the ken of most lay jurors" and "will not contribute to their understanding of the particular factual questions posed." Larkin, 978 F.2d at 971.

In Daubert, the Supreme Court set forth the analysis that a district court must perform to determine whether expert scientific testimony is admissible under Federal Rule of Evidence 702. "[W]hen faced with a proffer of expert scientific testimony, a district court must determine 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" Hall, 165 F.3d at 1101 (quoting Daubert, 509 U.S. at 592). When applying the Daubert framework, if the court determines that the expert scientific evidence is properly excluded under the second prong of Daubert (helpfulness to the jury), the court is not required to undertake an inquiry into the reliability of the proffered testimony. Id. at 1103 n.4.

In its leading post-Daubert case dealing with the admissibility of expert testimony on eyewitness identification, the Seventh Circuit affirmed the district court's exclusion of the expert testimony because such testimony would not assist the trier of fact. Hall, 165 F.3d at 1108. In Hall, the defendant was charged with kidnaping. He sought to present at trial the expert testimony of Dr. Gary L. Wells, a renowned professor of psychology, regarding eight separate aspects regarding the reliability of eyewitness identification and the suggestibility of memory. Id. at 1101. The proffered testimony of Dr. Wells in Hall closely parallels the positions of Dr. Geoffrey Loftus, whose sample testimony Defendant Carter has submitted in support of his motion.

In a thorough discussion of the issues, the court of Appeals in Hall: (1) reviewed the Daubert

7

requirement; (2) held that the district court properly applied the Daubert framework in its analysis of the proffered testimony; (3) affirmed that the district court reasonably exercised its discretion in its decision to exclude the expert testimony; (4) discussed the "long line of cases" from the Seventh Circuit that reflected the court's disfavor of expert testimony on the reliability of eyewitness identification; and (5) noted that the district court's decision to exclude the testimony was bolstered by the opportunity for a thorough cross-examination of the witnesses, the clear cautionary instructions given to the jury by the court, and the existence of corroborating evidence. Id. at 1100-08. In his concurring opinion, Judge Easterbrook discussed the value of social science in court proceedings, mentioning, among other areas, the study of memory. However, he concluded that, with regard to testimony pertaining to memory:

> The judge could inform jurors of the rapid decrease of accurate recollection, and the problem of suggestibility, without encountering the delay and pitfalls of expert testimony. Jurors are more likely to accept that information coming from a judge than from a scholar, whose skills do not lie in the ability to persuade lay jurors (and whose fidgeting on the stand, an unusual place for a genuine scholar, is apt to by misunderstood.) Altogether it is much better for judges to incorporate scientific knowledge about the trial process into that process, rather than to make the subject a debatable issue in every case.

Id. at 1120.

In other cases, the Seventh Circuit has unfailingly affirmed the decisions of district court judges to exclude expert testimony on the psychology of memory and the reliability of eyewitness identification. For example, in Crotteau the Seventh Circuit affirmed the decision of the district court to exclude proffered expert testimony by a psychologist regarding the reliability of eyewitness testimony and the effects of stress on the accuracy of eyewitness identification. Crotteau, 218 F.3d

8

at 831. The Court of Appeals held that the opportunity for cross-examination, the use of cautionary instruction and the presence of corroborating evidence obviated the need for expert testimony. Id. at 832; see also Hall, 465 F.3d at 1107-1108.

Likewise, in Larkin, the Seventh Circuit affirmed the district judge's decision to deny the defendant's request to appoint an expert to testify on the undependable nature of eyewitness identification under stressful circumstances. Larkin, 987 F.2d at 971. Although the case was decided before Daubert, the Court of Appeals evaluated the testimony in a manner consistent with the forthcoming Daubert framework. Id. Moreover, the Seventh Circuit has reaffirmed its pre-Daubert decisions as being consistent with Daubert. See Hall, 165 F.3d at 1106.

As in Crotteau, the defense lawyer in Larkin had "ample opportunity at trial" to discuss the hazards of eyewitness identification and cast doubt on the witnesses' identification of his client through cross-examination. Larkin, 978 F.3d at 971. Further, the district court gave comprehensive instructions to the jury which "focused 'the jury's attention on the reliability of the witness identification and . . . acquant[ed] the jury with factors relevant in evaluating those identifications.'" Id. (quoting United States v. Anderson, 739 F.2d 1254, 1258 (7th Cir. 1984).

In this case, the facts do not create an unusual or compelling situation in which the aid of an expert witness is required. Carter has been charged with robbing two banks at gunpoint, the Firstar Bank on September 1, 2001, and the First American Bank on September 4, 2001. The government intends to present the testimony of witnesses to each robbery who have identified Eddie Carter as the robber. However, identification testimony will not be the only evidence that the government offers. For the First American Bank robbery, the government intends to introduce corroborating

evidence which links Carter to the getaway car used in the robbery.[1]

Moreover, the Government seeks to have the court give two instructions approved by the Crotteau court, which specifically caution the jury to evaluate identification testimony carefully. Crotteau, 213 F.3d at 832. Finally, defense counsel will have ample opportunity to cross-examine the eyewitnesses at trial, and to argue to the jury that the identifications are not reliable. The Court rules that the Crotteau instructions will be given.

Additionally, Federal Rule of Evidence 702 analysis incorporated to some extent a consideration of the dangers, particularly the danger of unfair prejudice, enumerated in Rule 403. The "helpfulness factor" under Rule 702 involves consideration whether the expert testimony would be misleading or confusing in the context of the trial. In this case, any eyewitness who identified the defendant may be cross examined about the reliability of their identification, the length of time they saw the defendant, the conditions under which they saw the defendant, the length of time which elapsed between seeing the defendant and the photos or the defendant in person, and the number of times the witness viewed the photo array or arrays. Cross examination may include additional questions dealing with perception, recall and retention.

As the Seventh Circuit has stated, cross-examination, cautionary instructions, and corroborating evidence can obviate the need for expert testimony on eyewitness identification. Crotteau, 213 F.3d at 832-33. In this case, the testimony of an expert witness regarding the psychology of memory and the reliability of eyewitness identification will not aid the jury, and may create confusion or undue influence.

---

[1] The government may also present DNA evidence linking Carter to a crack pipe that the robber dropped in Firstar Bank. The analysis of the DNA evidence has been completed and is favorable to the government.

## IV. CONCLUSION

For the reasons stated above, the Court denies Defendant's Motion to Suppress Identification and the appointment of a eyewitness identification expert.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 11-7-03